**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROSEMARY KEANE, | ) | |
| | ) | No. 15 C 1413 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosemary Keane ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("SSA") denying her Social Security disability benefits under Title II ("DIB") of the Social Security Act ("the Act"). Plaintiff has filed a brief, which this Court will construe as a motion for summary judgment [12] and the Commissioner has filed a memorandum, which this Court will construe as a cross-motion for summary judgment [19]. After reviewing the record, the court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

## BACKGROUND

### I.     Procedural History

Plaintiff filed a DIB application on November 28, 2011 alleging a disability onset date of December 20, 2011 due to Carpal Tunnel Syndrome, tendonitis, back pains, arthritis, Chronic Obstructive Pulmonary Disease ("COPD"), and a possible slipped disc in her neck. (R.157, 160.) Her initial application was denied on April 12, 2012 and again at the reconsideration stage on September 6, 2012. (R. 72-73.) Plaintiff requested a hearing before an Administrative Law Judge

("ALJ") on October 11, 2012 and the hearing was scheduled on June 6, 2013. (R. 95-96, 43-71.) Plaintiff appeared at the hearing with her attorney. (R. 43.) A Vocational Expert ("VE") was also present and offered testimony. (*Id.*) On August 21, 2013, the ALJ issued a written decision denying Plaintiff's application for DIB benefits. (R. 25-37.) The Appeals Council ("AC") denied review on December 12, 2014, thereby rendering the ALJ's decision as the final decision of the agency. (R. 1-4; *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).)

## II. Medical Evidence

On August 28, 2012, state agency psychologist, Dr. Don White, Ph.D., examined Plaintiff and completed a Psychological Evaluation. (R. 329-31.) Dr. White observed that Plaintiff's motor activity was somewhat elevated and that she talked quickly and appeared to be somewhat alarmed. (R. 329.) Dr. White noted that Plaintiff's mood and affect reflected poor sleep, depressed mood, and that she reported experiencing recurrent periods of depression prior to her onset date. (R. 330.) Dr. White diagnosed Plaintiff with major depression – recurrent, and generalized anxiety disorder. (R. 331.)

On September 5, 2012, state agency psychologist, Dr. Patricia Beers, Ph.D., completed a psychiatric review technique form ("PRTF"). (R. 339-51.) Dr. Beers indicated that Plaintiff suffered from major depression and generalized anxiety but her impairments were not severe. (R. 339, 342, 344.) Dr. Beers also indicated that Plaintiff had limitations in her activities of daily living and had no other functional limitations. (R. 349.)

On April 5, 2013, psychiatrist, Dr. Xzaohong Yu, M.D., performed a mental examination and completed a mental health evaluation. (R. 417-19.) Dr. Yu indicated that Plaintiff reported social isolation, anhedonia, lack of energy and motivation, insomnia, and worsening memory. (R. 417.) Dr. Yu also indicated that Plaintiff's mood was sad and depressed, and that her mood was

not appropriate. (R. 418.) Dr. Yu diagnosed Plaintiff with moderate major depressive disorder – recurrent, chronic pain, arthritis, carpal tunnel syndrome, COPD, marriage crisis, and assigned her a Global Assessment of Functioning ("GAF") score of 40/45.[1] (R. 419.) Dr. Yu also continued Plaintiff's bupropion and other medications and prescribed her Cymbalta.[2] (R. 419.) On an April 28, 2013 follow-up, Plaintiff reported feeling better but that her Cymbalta made her feel anxious. (R. 420.) Dr. Yu increased the dosage of Plaintiff's Wellbutrin and recommended she undergo psychotherapy.[3] (R. 420.)

On August 21, 2014, psychologist, Dr. Christopher Migalski, Psy.D., completed a Mental Residual Functional Capacity ("RFC") Questionnaire. Dr. Migalski indicated that he had treated Plaintiff for major depression, mood disorder, generalized anxiety disorder, and chronic pain syndrome. (R. 424.) Dr. Migalski noted that since 2013, he had treated Plaintiff weekly with psychotherapy, psychiatric medication, and relaxation therapy, and that her current prognosis was poor. Dr. Migalski assigned Plaintiff a GAF Score of less than 50. (R. 424.) Dr. Migalski indicated that Plaintiff had memory impairment, perceptual or thinking disturbances, change in personality, disturbance in mood, emotional liability and impairment in impulse control, loss of measured intellectual ability of at least fifteen intelligence quotient ("IQ") points from premorbid levels or overall impairment/index clearly within the severe impairment range of neuropsychological testing, and that she exhibited emotional withdrawal and/or isolation. (R.

---

[1] Global Assessment of Functioning scale, is "a rating of psychiatric status from 1 (lowest level of functioning) to 100 (highest level), assessing psychological, social, and occupational functioning; widely used in studies of treatment effectiveness." *Dorland's Medical Dictionary* http://www.dorlands.com (last visited May 31, 2016) [hereinafter *Dorland's* ]. A GAF score of 40 to 50 correlates with "[s]erious symptoms . . . *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Yurt v. Colvin*, 758 F.3d 850, 853 (7th Cir. 2014) (emphasis in original).

[2] Bupropion is "a monocyclic compound structurally similar to amphetamine, used as an antidepressant and as an aid in smoking cessation to reduce the symptoms of nicotine withdrawal." *Dorland's*. Cymbalta is the "trademark for a preparation of duloxetine hydrochloride," which is "used for the treatment of major depressive disorder and the relief of pain in diabetic neuropathy." *Dorland's*.

[3] Wellbutrin is the "trademark for a preparation of bupropion hydrochloride," which is "used as an antidepressant and as an aid in smoking cessation to reduce the symptoms of nicotine withdrawal."

424-25.) Dr. Migalski also indicated that Plaintiff exhibited anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, decreased energy, feelings of guilty of worthlessness, difficulty concentrating or thinking, thoughts of suicide, and that she was easily distracted. (R. 425.) Dr. Migalski noted that Plaintiff exhibited a bipolar syndrome. (R. 425.) Dr. Migalski also noted that Plaintiff could only tolerate very low stress in an employment setting and that she suffered from fatigue, which severely impaired her ability to work. (R. 427.) Dr. Migalski then noted that Plaintiff's symptoms interfered with her ability to maintain persistence and pace to engage in competitive employment, and interfered with the her ability to retain employment. (R. 427.) Dr. Migalski indicated that if Plaintiff returned to work the severity of her symptoms would markedly increase. (R. 428.) Dr. Migalski also indicated that Plaintiff's symptoms extremely impaired her ability to perform activities of daily living, markedly impaired her ability to maintain social functioning, and extremely impaired her ability to maintain concentration, persistence, and pace. (R. 428.) Dr. Migalski further indicated that Plaintiff's ability to maintain concentration for a two hour segment and her ability to complete a workday or workweek without interruptions from psychologically based symptoms were poor. (R. 430) Dr. Migalski then indicated that Plaintiff was likely to miss for or more days per month, due to her psychologically based symptoms. (R. 430.)

## III. Plaintiff's Testimony

At the time of the hearing, Plaintiff was fifty-five years old and married with a twenty-six year old son. (R. 47.) She finished high school and has had secretarial training. (*Id*.) Plaintiff testified that she had been a waitress for 25 years and stopped working around December of

4

2011, due to her disability. (R. 48.) She further testified that as a waitress, she lifted at most twenty pounds. (*I.*)

Plaintiff testified that her arthritis and carpal tunnel syndrome had given her problems with her right hand. (R. 49-50.) The pain started gradually and she had attempted to treat it with a rheumatologist. (R. 50.) Plaintiff rated her wrist pain a nine on a ten-point scale. (R. 55.) She took pain medication but stated that it did not completely relieve her of the pain. (R. 56.) Plaintiff further testified that the pain radiated down to her legs and back and that her doctor diagnosed her with arthritis. (R. 51.) She stated that she could stand on her legs for more than ten minutes. (*Id.*) Due to the pain, she purchased insoles but testified that they did not provide any relief for her pain. (*Id.*) Plaintiff further testified that she wore an elbow brace and back brace. (R. 56.)

Because of issues with insurance, Plaintiff testified that she had periods where she did not take her medication for two months. (R. 52.) She was currently taking Prevacid,[4] Vicodin,[5] and Cymbalta for her depression. (R. 52-53.) Plaintiff stated that she felt depressed every day and had been crying all the time the past six to eight months. (R. 53.) Plaintiff testified that she was taking Symbicort for her COPD.[6] (R. 54.) She stated that she did not take Symbicort every day because it caused her to be nervous. (*Id.*)

IV.  **ALJ Decision**

On August 21, 2013, the ALJ issued a written determination denying Plaintiff's DIB application. (R. 25-37.) As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2015. (R. 30.) At step one, the ALJ determined

---

[4] Prevacid is the "trademark for a preparation of lansoprazole," which is "used to inhibit the secretion of gastric acid for the symptomatic treatment of duodenal and gastric ulcers and gastroesophageal reflux disease and for the long-term treatment of hyperchlorhydria." *Dorland's*.
[5] Vicodin is the "trademark for combination preparations of hydrocodone bitartrate and acetaminophen," which is "used as an analgesic and antitussive." *Dorland's*.
[6] Symbicort is the "trademark for a combination preparation of budesonide and formoterol fumarate," which is "used an anti-inflammatory glucocorticoid used by inhalation to treat asthma, intranasally to treat allergic rhinitis and other inflammatory nasal conditions." *Dorland's*.

that Plaintiff did not engage in Substantial Gainful Activity ("SGA") since her alleged onset date of December 20, 2011. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of mild stenosis, mild degenerative joint disease of the right hand, mild COPD, mild degenerative disk disease, mild to median neuropathy of the right wrist, mild degenerative joint disease in the knees, and epicondylitis; the ALJ also found that Plaintiff's "depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 32.) At step four, the ALJ then assessed Plaintiff's Residual Functional Capacity ("RFC") and determined that Plaintiff could perform light work except that she could frequently handle, finger, climb ramps and stairs, and kneel. (R. 33.) The ALJ restricted her ability to climb ladders, ropes, and scaffolds and the ALJ further restricted her concentrated exposure to dust, fumes, odors, gases, and poor ventilation. (*Id.*) At the final step, the ALJ found that Plaintiff was capable of performing past relevant work as a waitress. (R. 37.)

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d

1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

**ANALYSIS**

Plaintiff first argues that the ALJ erred by finding that her mental impairments were non-severe, and therefore erred when assessing her RFC. Plaintiff contends that the ALJ ignored underlying medical evidence that established that her mental impairments contributed to significant functional limitations. (Pl.'s Br. at 7, Pl.'s Rep. Br. at 1.) Plaintiff further contends that an erroneous finding at step two of the sequential evaluation process automatically leads to an error at step four when evaluating the RFC. (Pl.'s Br. at 6.) The Commissioner responds that the ALJ reasonably assessed Plaintiff's mental functioning. (Def.'s Mem. at 6.) The Commissioner contends that Plaintiff did not challenge the ALJ's many justifications for concluding that Plaintiff's GAF Score did not credibly prove any work-related psychological limitations.

The RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545. In assessing the Plaintiff's RFC, the ALJ must consider both the medical and nonmedical evidence in the record. *See Id.* First, the Commissioner argues that the ALJ noted that a GAF score can reflect other factors that do not influence the agency's assessment of Plaintiff's work-related psychological functioning. While the Commissioner is correct that the GAF score is not essential to determining functioning, the ALJ is not allowed to completely disregard Dr. Yu's entire opinion.

In this case, the ALJ opined that Plaintiff's low GAF score is not at all dispositive for Social Security disability purposes, and that serious symptoms on the GAF scale do not translate

directly into extreme, marked, or even moderate degrees of limitation on the functional limitation scales used by Social Security. (R. 32.) The problem with the Commissioner's argument and the ALJ's analysis is that it cherry picks from the evidence and ignores the rest of the evidence that suggests a disability. "An ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) (citing *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir. 1982)). This "sound-bite" approach to record evaluation is an impermissible methodology for evaluating the evidence. *Id.* Here, the ALJ discussed portions of Dr. Yu's opinion, opining that "her mental health provider noted that she has goal directed thought process and no abnormal thought content," and the ALJ also weighed Plaintiff's GAF Score; however, she ignored the rest of the Dr. Yu's opinion that suggested that Plaintiff had an impairment that seriously limited her RFC to perform work. (R. 32.) The ALJ failed to discuss that when Dr. Yu first examined Plaintiff he indicated that Plaintiff reported social isolation, anhedonia, lack of energy and motivation, insomnia, and worsening memory. (R. 417.) Similarly, the ALJ failed to discuss that Dr. Yu also performed a mental exam and indicated that Plaintiff's mood was sad and depressed, and that her mood was not appropriate. (R. 418.) Further, the fact that Dr. Yu prescribed Plaintiff' psychotropic medication and recommended psychotherapy suggests that she was suffering from a severe impairment, and the ALJ was required to assess this portion of Dr. Yu's opinion.

Next, the ALJ's reliance on state agency psychologist Dr. Beer's opinion was misplaced and she erred when assigning "great weight" to the opinion because the opinion was formed without a complete case record. SSR 96-6p provides that

> the opinion of a State agency medical or psychological consultant may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a ***complete case record*** that includes a medical report from a specialist in the individual's

particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

SSR 96-6p. Here, Dr. Beer's PRTF was completed based on medical evidence and evaluation up until September 5, 2012. (R. 317.) The PRTF not include the subsequent opinions of Dr. Yu, or the consideration that Plaintiff was prescribed psychotropic medication. Therefore, Dr. Caldwell's opinion could not have been used as a basis to contradict the opinions of treating physician Dr. Yu, nor could it have been given greater weight or used as a basis for Plaintiff's RFC because it was formed in September of 2012 and was not based on a *complete case record*.

Lastly, Plaintiff argues that since the assigned RFC was erroneous, she was not capable of performing her past relevant work and the ALJ's step four determination was also in error. Because this Court agrees that the RFC assessment was erroneous and not supported with substantial evidence, the Court need not address the remaining step four determination deficiency claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume this issue was omitted from the opinion because no error was found. Indeed, the Court admonishes the Commissioner that, on remand, special care should be taken in evaluating Plaintiff's RFC as a whole.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

**ENTER:**

**DATED:** June 17, 2016

_____
Susan E. Cox, U.S. Magistrate Judge